## HABEAS CORPUS.

JOHN V. N. YATES, plaintiff in error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, defendants in error.

In Ct. of E. 6 J. R, 337–523.   In S. Ct. 4 id. 317–354.

(Note by the reporter. " This case is so entitled in the record returned by the Supreme Court, though the proceedings before that court were *ex parte* Yates.)

*Commitment by Court of Chancery, for an Offence " Against the Statute," &c., and a Contempt; Discharge on Habeas Corpus by Judge of Supreme Court in Vacation; Re-commitment by Court of Chancery; Habeas Corpus to Supreme Court; Writ of Errors to Court of Errors; Supersedeas by Court of Chancery of Writ of Error, quia improvide emanavit; Writ of Error to Judgment of Supreme Court on Habeas Corpus.*

THE plaintiff in error, having had a complaint preferred against him by one Bacon, charging him, then a *master*, but not a *solicitor*, of the Court of Chancery, with having exacted from him 18 dollars, under the false pretence of being a solicitor; and subjecting him to great delay and trouble in a suit in that court; was examined, *ex parte*, and an attachment issued against him.   This order was afterwards opened on his application, so as to allow him to make his defence. When that was gone into, it was not denied that he had acted as *solicitor*, and received the money, but he alleged that he had filed the bill in the name of Peter W. Yates, a solicitor, and with his consent.   This the latter denied.   The result was that he was committed by the Chancellor for mal-practice and *contempt*.   He then obtained a writ of *habeas corpus* from Mr. Justice Spencer, in vacation; and upon hearing before him, that judge declared the conviction illegal and void, and ordered his discharge.   He was accordingly discharged, but the Court of Chancery reclaimed him, as its prisoner on the attachment, and he was accordingly remanded to the same custody.   The prisoner then brought a writ of *habeas*

*corpus* to the Supreme Court, where it was urged that he was entitled to his discharge on three grounds; viz.:

1. "That the matter laid to his charge was an *offence prohibited by statute*, and therefore not cognizable in the Court of Chancery, which has no criminal jurisdiction ; nor is it punishable anywhere, by an attachment for a contempt."

2. "That the conviction was founded upon evidence which the law does not hold sufficient to warrant a conviction, even for a contempt."

3. "That the imprisonment being in execution and conviction, should be definite and terminate either by the efflux of time, or on the doing some act by the prisoner, and cannot be indefinite and uncertain, as "until the further order" of the authority inflicting it." p. 476.

The Supreme Court, however, held the *conviction* and commitment legal and valid ; and the prisoner was remanded. It appears that he was then again, a third time, recommitted by the order of the Court of Chancery, upon which he was again liberated by the recorder of Hudson, acting as a commissioner of the Supreme Court.

The party sued out his writ of error, however, to the Court of Errors, to reverse the judgment of the Supreme Court. But before any return made thereto by the justices of that court, the Chancellor *ex mero motu*, as it would seem, issued out of the Court of Chancery, a writ of *supersedeas* to the writ of error issued out of Chancery, as was then the course of justice, to carry the cause to the Court of Errors. The writ of supersedeas was in the name of the people, and directed to the justices of the Supreme Court, and recited the issuing the writ of error to the Court of Errors, out of the Court of Chancery, and then proceeded : " Nevertheless, because that writ, out of our said Court of Chancery, *improvidently and irregularly issued*, therefore we command you, that from sending the records, proceedings and writ of error aforesaid, before our said president, senators, and Chancellor, yon entirely desist and supersede." Tested 1st Sept., 1809.

On the 5th of February, 1810, the cause came before the Court of Errors, on a motion *ex parte* Yates, to that court, for an order " that the justices of the Supreme Court of judi-

cature, forthwith make return to the writ of error allowed and filed in this case, according to the exigency of the writ."

On the 13th of February, the court having heard the Chancellor assign his reasons for issuing a *supersedeas* to the writ of error, made the rule absolute.

On the 15th, the writ of error was returned by the Supreme Court, with their certificate and return annexed to the writ, stating that the writ of error was filed in the clerk's office on the 12th of September last, and that on the 28th of Sept., the *supersedeas*, which was annexed to their return, was also filed in the clerk's office. They then concluded: "The said justices are accordingly unadvised what of right ought to be done in the premises; as they humbly apprehend that it appertains to your honorable court and not to them to determine, whether the said writ of error be valid and operative notwithstanding the said writ of *supersedeas*, or whether it be null and void, by reason of the said *supersedeas*."

"If your honorable court should adjudge it (the writ of error) inoperative, no farther return will be required; but if your honorable court should adjudge it valid and operative, the said justices are ready to obey the said writ of error, by making a return according to the requisition thereof. All which is humbly submitted.

James Kent, Chief Justice."

This return having been read, the court directed the *Attorney General*, on the one side, and the counsel of Mr. Yates on the other, to argue the preliminary question, "whether the Chancellor had a right to issue the *supersedeas*, and whether it was not null and void?"

After a learned and elaborate argument, a majority of the court, 19 to 9, were of opinion that the return was insufficient, and that the *supersedeas* was a nullity.

A further return was then made by the Supreme Court, containing the *habeas corpus* on which Mr. Yates had been brought before it; the return to that writ by the sheriff of Albany, and of the judgment of the Supreme Court awarding a *remittitur*. It also showed the attachment issued by the Court of Chancery; two several orders for the discharge of Mr. Yates by Mr. Justice Spencer, in vacation; and the or-

der of the Court of Chancery, reclaiming him as its prisoner on the attachment.

After reading this return, a motion was made that the writ of error *be quashed;* and the court again directed the Attorney General on the part of the People, and the counsel for Mr. Yates, to argue the question, "whether a writ of error would lie in this case? After another elaborate argument,

Spencer, J., and Yates, J., delivered opinions in favor of sustaining the writ; Thompson, J., and Kent, J., for quashing it, with whom Van Ness, J., concurred. The Chancellor, of course, was in favor of quashing the writ of error. The question was stated to be "*whether a writ of error would lie on a judgment of the Supreme Court, on a habeas corpus?*" and a majority of the court, 16 to 12, held that a writ of error would lie in this case; and that the writ ought not to be quashed.

Another argument by the same counsel, then took place on the general questions raised in the court below.

The Supreme Court (S. Ct. 4 J. R., 317 to 354,) had decided: 1. That Mr. Yates, having been committed by an order of the Court of Chancery, his discharge by a judge of the Supreme Court in vacation, on *habeas corpus*, was not conclusive, either upon the Court of Chancery or the Supreme Court; and the prisoner may after such discharge, be again committed for the same cause.

2. That the order of the Court of Chancery, committing him, stating that he had while he was master, filed a bill to which he subscribed the name of one of the solicitors of the court, without his knowledge or consent, and prosecuted the cause in his name, " contrary to the statute in such case, made and provided, in wilful violation of his duty as master; and in contempt of the authority of the court;" and "for the said mal-practice and contempt, the said J. V. N. Yates, was ordered to be committed to gaol, there to remain until the further order of the court," was a legal and valid commitment for a *contempt;* even if the party might have been indicted for an offence against the statute concerning counsellors, solicitors, and attornies. But whether it

was an *indictable offence* within that statute, was not decided.

5. That the Supreme Court has no power to discharge a person committed by the Court of Chancery for a contempt; and it will presume that the proceedings of that court were legal; and that the conviction for the contempt was on sufficient and legal evidence.

6. That a commitment "until the further order of the court," is good.

The Court of Errors having heard argument of these and other questions, raised upon the return; a majority of the court voted to *reverse* the judgment of the Supreme Court upon the *habeas corpus;* Lansing, Chancellor, delivering the only opinion in favor of affirmance, and Dewitt Clinton, senator, the only one in favor of reversal.

---

☞ The reporter in a note to this case, says : " As no other members of the court assigned their reasons, but answered simply in the affirmative or negative, I have considered the majority, who were of opinion that the judgment of the Supreme Court ought to be reversed, as concurring on all the grounds expressed in the opinion above delivered; (by Clinton, senator,) and have accordingly so stated the points as decided in the cause, in the marginal note, pp. 337, 338."

We accordingly give the points as stated by Mr. Johnson, with some slight verbal additions, merely explanatory.

Preliminary questions decided.

I. The Court of Chancery has no right to refuse a writ of error, or to supersede it, after it has issued, in any civil case or in a criminal case, not capital.

II. A writ of error will lie on a judgment of the Supreme Court, on a *habeas corpus.*"   On the merits:

1. That the order of commitment in this case, reciting that one of the *causes of commitment,* was *"for an offence against the statute,"* of which the Court of Chancery had no jurisdiction, the wole order was illegal and *void.*

2. The Court of Chancery can not commit for a contempt, on the *affidavits of witnesses only,* without first putting the party to answer to interrogatories.

And *semble* that courts of justice can not commit for con-

tempts, for an indefinite time; or until the further order of the court.

3. A judge of the Supreme Court has the same power under the *habeas corpus* act, which the court itself possesses at common law, except in cases of treason or felony. If a judge, in vacation, discharges a prisoner brought before him on *habeas corpus*, such discharge, whether erroneous or not, is final and conclusive, and the party can not be again imprisoned for the same cause, unless by order of the court in which he is *recognized to appear*, or other court having jurisdiction of the cause; and that in this case the Chancellor could not recommit the party for the same cause.

4. A person out of court can not be committed for a contempt, by an *order* of the court, without a writ or warrant; nor can a person who has been regularly committed, and afterwards set at large by order of a judge, be recommitted, by an *order* of the Court of Chancery, grounded upon and reciting the original writ of attachment.

5. Where the Court of Chancery commits a person for an offence " against the statute relative to solicitors and others," also for *contempt*, the whole is void, and a judge in vacation, or the Supreme Court in term time, may discharge the prisoner on *habeas corpus ;* and *it seems* that a judge of the Supreme Court, or the court, may discharge on *habeas corpus*, a prisoner committed by the Court of Chancery for contempt only, and that a prisoner may be discharged on *habeas corpus*, though the conviction or judgment on which he has been committed, remain in full force.

---

☞ The foregoing decision of the Court of Errors, was afterward brought under review in the Court of Errors in February, 1810; and in elaborate discussions at the bar, and by two members of the court on opposite sides, its authority was questioned, and opposite conclusions according to the marginal note of the reporter, adopted on every material point decided in *Yates* v. *The People.*

This review took place in the suit commenced in the Supreme Court by Mr. Yates, to recover the penalty of

$1,250, against the Chancellor, under the 5th section of the *habeas corpus* act, for the re-commitment of the party after his discharge upon *habeas corpus.*